## A. J. Moore v. The State.

### No. 2600. Decided June 23, 1903.

**1.—Murder—Defendant as Witness.**

On a trial for murder, it was competent for defendant as a witness to testify that he had, on the day before his trial began, married a State's witness, who was the only eyewitness to the killing—even though he married her to suppress her testimony.

**2.—Same—Wife as Witness.**

On a trial for murder, defendant testified that he had married the main State's witness the day before the trial; whereupon the State's counsel had the woman brought into court and placed her upon the witness stand and

asked her several questions; and defendant objected to her testimony because she was his wife; and the court, having asked the witness if she was defendant's wife, and upon her answer in the affirmative, sustained defendant's objection. Held, reversible error, because it was evident she was called and placed upon the stand as tending to show defendant had married her in order to suppress her testimony, and to compel defendant to object to her testimony after it had been thoroughly established that she was defendant's wife, and when the fact of marriage could easily have been ascertained from other sources. Defendant's good or bad faith in marrying her made no difference as to her competency as a witness. Henderson, Judge, dissenting.

Appeal from the District Court of Hill. Tried below before Hon. William Poindexter.

Appeal from a conviction of murder in the second degree; penalty, fifteen years imprisonment in the penitentiary.

The indictment charged appellant with the murder of Mat Hunt, on the 31st day of August, 1902, by shooting him with a pistol.

This is the second appeal in this case. Moore v. State, 44 Texas Crim. Rep., 526. The important facts are shown in this first appeal.

*Chas. M. Smithdeal,* for appellant, filed an able and elaborate argument in the case.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This is the second appeal from a conviction of murder. Moore v. State, 44 Texas Crim. Rep., 526. While testifying in his own behalf appellant was permitted, over objections, to testify that he had married, on the day before his trial began, the State's witness Susie Jones. The bill is explained by the court as follows: "The court was then, and is now, of opinion that the question and answer were proper, as the State had a right to show why Susie Jones, the only immediate eye witness to the homicide, was not put on the stand, and this tended to show that fact." That appellant had married the main State's witness on the day before his trial began is a legitimate subject of inquiry, and it was not error to require defendant to state that fact while testifying in his own behalf, even though he married her, as insisted by the court, for the purpose of suppressing her testimony.

The State also placed Sheriff Satterfield upon the stand and asked him if Susie Jones was then in attendance upon the court. He stated he did not know whether she was present or not. Whereupon the county attorney required the witness to go out and ascertain whether she was present in attendance upon the trial. After going to the witness room, he returned with Susie Jones. After he had brought her in the courtroom, the county attorney placed her upon the witness stand. Objection was urged because it had already been shown that she was the wife of appellant, and the State had no right to call her to the witness stand; that it was done for no legitimate purpose, and only for the purpose of prejudicing defendant in the minds of the jury. The court failed to rule upon these objections, "and the county attorney proceeded to ask

said Susie Jones certain questions with reference to this case. And the defendant was compelled to and did objct to said Susie Jones testifying, on the ground that she was his wife, and therefore not a competent witness." The court finally sustained this objection. The court says that the reason he failed to rule upon the first objection was that there was nothing upon which to rule, "and the court could not know what State's counsel wanted to know what Susie Jones was present for, and did not feel authorized and required to prevent the county attorney from asking the sheriff, in the presence of the jury, whether Susie Jones was present and in attendance upon the court; nor from placing her on the witness stand. Defendant while on the stand had stated that he had married Susie the day before, but this was by no means conclusive; and when Susie was placed on the stand and objection made to her testifying on the ground that she was the wife of defendant, the court then asked her if she had been married to defendant. And upon her answering that she had been and was his wife, the court sustained the objection. The State certainly had the right to explain why the only immediate eye witness to the shooting was not placed upon the stand by the State. Besides this, the State had the right to show by her that she was not the wife of defendant and competent to testify, and if she had answered that she had not been married to defendant and was not his wife, she could have testified, notwithstanding defendant's statement, the question being one for the jury in case of an issue of the kind." The witness Satterfield could have been required to testify that Susie Jones was in attendance upon the trial and in the jury room; and the State could have shown by any witness other than appellant's wife the matters about which the inquiry was made. The fact that appellant had married Susie Jones the day prior to his trial was also the subject of legitimate inquiry from proper sources. But here the statute expressly prohibits the use of the wife as a witness against her husband; and this though he had married her for the express purpose of suppressing her testimony against him. Miller v. State, 37 Texas Crim. Rep., 375; United States v. White, 4 Utah, 499. It makes no difference at what time the relation of husband and wife begins. The exclusion of their testimony, under our statute, and to its fullest extent, operates wherever the interests of either are directly concerned. 1 Greenl., secs. 334, 336. And this although he married the witness after she was placed under process. Redley v. Wellesley, 3 Car. & P., 558; State v. Armstrong, 4 Minn., 335. And the question of public policy is not an argument to the contrary. Public policy must be in accord with our statutory enactment. When the marriage ceremony is performed, no matter what the motive was or may be, the witness thenceforward becomes the lawful wife of defendant, and is prohibited under our statute from testifying against her husband, except where the offense is by the husband against her person. It will be observed in this case that the county attorney *called* the witness in behalf of the State and asked her several questions in regard to the case, when, upon objection by appellant that she was his wife, the

court then asked her the question if she was his wife, and receiving an affirmative reply, excused her from the witness stand. This whole proceeding seems to have been a spectacular performance to force defendant to object to his wife testifying against him, in order to get the benefit of her testimony thus far in aid of the supposition and theory that appellant had married her to suppress her testimony. The point insisted upon by the State in regard to this whole matter of proving the recent marriage of appellant to Susie Jones was to convince the jury, first, that Susie Jones was the only eyewitness to the homicide for which appellant was being tried; second, that he had married her for the express purpose of suppressing her testimony; and, third, her evidence was of a damaging character to him. Any fact drawn from the wife proving or tending to prove that appellant had married her for the purpose of suppressing her testimony was directly against him. The county attorney had no right to call her as a witness against him. It is thoroughly demonstrated by the fact that appellant had married her; and if the court and the county attorney were not satisfied with the statement of appellant that he had married the witness, it was a matter easily ascertained without calling the wife, and the good or bad faith of appellant in marrying her, and whether the court believed what the defendant testified in regard to it, would make no difference. The fact that she was the wife of defendant put the seal upon her lips and excluded her being called as a witness against him. The fact that appellant had married the witness, and the further fact that it was done for the purpose of suppressing her testimony, were so intimately blended under the peculiar facts that they could not be separated; and the fact that he had married her was one of the main facts relied upon by the State to show appellant's act in what the State contended was suppressing the testimony of the wife. It is well settled in cases of bigamy that the lawful wife can not be called to prove her marriage with the accused, nor for the purpose of identifying him. Boyd v. State, 33 Texas Crim. Rep., 470, and authorities cited; Law of Evidence, by Burr W. Jones, vol. 3, sec. 752, authorities collated in note 1; see, also, sec. 753, note 18. There is no question of the injurious effect of this action of the county attorney as sustained by the court, because it tended to uphold with fearful effect the contention of the State that, by reason of his marriage with the witness the day before, his purpose was to suppress her testimony, and that her evidence was of a seriously damaging effect against him. It was admitted upon the theory that it was a suppression of the testimony, and the wife was the most important witness in regard to the killing; and it would seem that the State placed the wife on the stand to get whatever of benefit there could arise from the objection urged by appellant that she was his wife, in support of the theory of suppression of evidence. This is made patent by the reason it was the subject of considerable portion of the argument of State's counsel before the jury. It was held in Brock's case, 44 Texas Crim. Rep., 335, 71 S. W. Rep., 71, that the use of the wife against accused was reversible error, whether

exception was reserved or not. Certainly it could not be held less an error where appellant was urging his objection from the time this matter became involved in the case until its final termination. Because of this error the judgment is reversed and the cause remanded.

*Reversed and remanded.*

HENDERSON, JUDGE (Dissenting).—I do not agree to the reversal of this case, and because I believe the question is an important one, I will express my views.

On the trial the State was permitted to prove by appellant on cross-examination that, on the day before the trial, he had married Susie Jones. The State was also permitted to prove by Sheriff Satterfield that Susie Jones was present in court. The State then called her to the witness stand and proved by her that on the day preceding she had married appellant; and then proceeded to ask her certain questions concerning the case. Appellant objected to any interrogation of the witness by the State, because she was his wife. This objection was sustained by the court, all of the other objections leading up to this having been overruled by the court. Appellant insists that when it was first disclosed that Susie Jones was the wife of appellant, the conduct of the State in bringing her to the witness stand and proving by her that she was appellant's wife, and then proceeding to ask her questions regarding the case, and compelling appellant to object to her testimony on the ground that she was his wife, was not in good faith, but was a spectacular performance on the part of the State, calculated to prejudice appellant before the jury, and was really the use of appellant's wife against him as a witness. I believe it was proper for the State to assure itself that Susie Jones was really the wife of appellant and that she had married him only the day before; and it was not only competent to elicit this fact from appellant himself in cross-examination, but the State was authorized to show that Susie Jones was in attendance on the court, and to prove by her also that she had married appellant. And I can not say that this conduct on the part of counsel for the State was not done in good faith. If she had not been presented to the jury they would not have been apprised of the fact that she was then present, and in a situation to testify for appellant, and her absence might have been accounted for on various pretexts. If any fact regarding the homicide had been elicited from her, of course, a different question would be presented; but here we have in evidence, strongly it is true, the fact of her intermarriage with appellant on the day before, and her presence then in court. This was not using her as a witness against appellant, but was affording the jury an insight into his conduct with reference to her, which they had a right to know. The circumstances here shown, to wit, the fact of appellant's intermarriage with the principal State's witness only the day before, would tend to show, at least it would bear that construction, that he had married her for the purpose of suppressing her testimony. I understand it is a rule of universal application

that it can always be shown that a defendant has fabricated or suppressed testimony. Appellant further maintains that the court committed an error in allowing State's counsel to animadvert on the failure of appellant to use his wife as a witness on his behalf; and in this connection he complains that the court refused to give certain requested special instructions on this subject. It has long been the doctrine in this State that argument could be made on the failure of a defendant to use his wife as a witness. Mercer v. State, 17 Texas Crim. App., 452; Armstrong v. State, 34 Texas Crim. Rep., 250; Smith v. State, 3 Texas Ct. Rep., 357, 65 S. W. Rep., 186; Locklin v. State, 8 Texas Ct. Rep., —.

Boyd v. State, 33 Texas Crim. Rep., 470, and authorities cited in that connection in the majority opinion are not in point, because the question there was bigamy, and the former and subsequent marriages were the material issues in the case, and, of course, the first wife was not a competent witness against the husband to prove the marriage. Graves v. United States, 150 U. S., 118, also cited by appellant's counsel, is not in point. There it was held by a majority of the court that, inasmuch as the wife could not be a witness for appellant, her absence from his side during the trial could not be argued before the jury to his prejudice. This is not the character of case here presented, for our statute authorizes the wife to be a witness for the husband, and his failure to produce her, where the record shows she was present at the homicide, is both upon principle and authority a legitimate subject for criticism on the part of the State. In this case she was present at the homicide, had been used on a former trial as a witness on behalf of the State. Appellant was shown to have married her on the day before. Under the circumstances, the State could not use her. Miller v. State, 37 Texas Crim. Rep., 575. But it was entirely proper that the jury should be informed of the reason that prevented the State from placing her on the stand; and this although it might suggest very strongly appellant had married her for the express purpose of suppressing her evidence.

Any other view would overrule the line of cases already referred to in which it has been uniformly held by this court that it was competent for counsel in argument to refer to the failure of appellant to use his wife as a witness where the facts show that she was present at the time of the alleged offense, and would be a material witness for him if his theory is true. If an argument of this character can be made on inferences merely, it would certainly indicate that so much of the facts can be proven from which the inferences or deductions can be drawn. In this particular case no fact was proven in regard to the case by appellant's wife. The facts developed by other witnesses showed that she was present at the time of the homicide, and was a witness for the State on the former trial, and it was merely shown by her that she had married defendant on the day previous to the trial. On objection being made to her testifying, the court declared her disqualified and sustained the objections. I can not regard this as using the wife as a witness against her husband. Only the disqualifying fact was shown by her and no

more.   Therefore, I do not believe the court is correct in holding this case should be reversed, inasmuch as the wife testified to no fact in the case in regard to the homicide, and consequently was not used as a witness against him, which is the language of the statute.